INTERURBAN RY. & TERM. CO. v. FREDERICK J. TREUHEIT.

MOTORMAN LEAVING SCHEDULED MEETING POINT BEFORE ARRIVAL OF CAR
HE WAS TO MEET CANNOT ABSOLVE HIMSELF FROM NEGLECT BY ASSUM-
ING ARRIVAL OF CAR BY PRESENCE OF REGULAR CREW THEREAT.

A motorman leaving a scheduled meeting point for cars upon see-
ing the regular crew of the car he was to meet, assuming that
the car had arrived, whereas such car was approaching in charge
of another crew which was not an uncommon occurrence, can-
not absolve himself from negligence and recover for injuries
sustained in the collision resulting therefrom, especially since,
in going up a grade at the rate of six miles per hour he could
see the roof of the approaching car some distance ahead of him,
but failed to give attention to the movement of the car.

ERROR to common pleas court.

The defendant in error, plaintiff below, while employed
as a motorman by the railway company, was severely injured
in a collision, due to the fact that he left the car barn under
the impression that the car which he was scheduled to meet at
that point had arrived, whereas the regular crew on the ap-
proaching car, whom he saw at the car barn, were not on that
run on that day. The jury gave him a verdict of $3,500

*Frank F. Dinsmore,* for plaintiff in error.

*C. S. Schneider* and *James E. Robinson,* for defendant in
error.

SMITH, J.

The main ground of error urged and relied upon in the
above case is that the verdict and judgment of the trial court
is not sustained by sufficient evidence.

We are of the opinion that his objection is well taken and
that the judgment should be set aside.

Treuheit was due at Coney Island barn at 7:20 A. M. on
the morning of the accident, where he was to wait, meet and

pass run No. 1, the car from Bethel, which reached the barn at 7:22.

It therefore made no difference to him, as was testified, whether the car upon which Thornton and Baker were motorman and conductor, was an extra car or not. The schedule in this regard had not been changed, and while the evidence is conflicting as to the matter of orders between the dispatcher and the conductor, yet under rule 27 issued by the company it was the duty of the motorman to be vigilant and cautious and not depend entirely upon the signals, brakes, or rules of the company for safety, and therefore we do not think that he could or should have relied upon the fact that he saw Purcell and Newton, who usually had this run, at the barn, to absolve himself from his own neglect, if in leaving the barn before the car from Bethel arrived, he afterwards collided with it. The evidence shows that crews are often changed and new men placed upon runs, and it would seem that the schedule as adopted by the company should control.

Further, we are of the opinion that after leaving the Coney Island barn the testimony shows that by the exercise of ordinary care and prudence he could and ought to have discovered the presence of the car from Bethel in time to have avoided the collision. He was going on an up grade at about six miles an hour and saw the roof of the approaching car some distance ahead of him but failed, as we think the evidence discloses, to have exercised the ordinary care and prudence he should, for while he testifies he reversed the motor, yet there is strong evidence that he was not giving the attention he should to the movement of the car, and that after the accident an examination of the controller showed the reverse handle was in the position of going ahead, running east.

It is unnecessary in this view of the case to consider other errors assigned, and as the judgment of the court below is not sustained by sufficient evidence the same is reversed.

**Giffen** and **Swing, JJ.,** concur.